# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERINA BOOKER** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 14-4984** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of the** | : | |
| **Social Security Administration** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    MARCH 7, 2017

# MEMORANDUM OPINION

## INTRODUCTION

On August 28, 2014, Plaintiff Sherina Booker ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final adverse decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Defendant"), which denied her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  The ultimate issue for judicial review is whether Defendant's final decision is supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to United States Magistrate Judge Lynne A. Sitarski for a *Report and Recommendation* ("R&R").  On April 7, 2016, the R&R was filed, which recommended that Plaintiff's request for review and motion for summary judgment be denied.  [ECF 21].  Plaintiff filed timely objections to the R&R, [ECF 26], to which Defendant filed a response.  [ECF 28].  The issues and objections presented by Plaintiff have been thoroughly argued and are, therefore, ripe for disposition.

---

[1]       Thereafter, on February 2, 2015, Plaintiff filed a *motion for summary judgment and request for review*, [ECF 12], pursuant to Federal Rule of Civil Procedures 56(a), to which Defendant, on March 6, 2015, filed a response.  [ECF 15].

After a comprehensive *de novo* review of the objections to the R&R, the administrative record, and the parties' submissions, for the reasons set forth herein, this Court finds no merit to Plaintiff's objections.  Therefore, the R&R is approved and adopted, and Plaintiff's *request for review* and *motion for summary judgment* are denied.

**BACKGROUND**

The factual and procedural histories of this case are detailed in the R&R and need not be recited herein in their entirety except where necessary to address Plaintiff's objections.  These objections consist of claims that the Magistrate Judge erred in finding that:

1.  The ALJ properly evaluated Plaintiff's mental impairments and concluded that her mental impairment imposed no work-related limitations.

2.  The ALJ did not ignore evidence, without explanation, that conflicted with the ALJ's decision that Plaintiff can perform the standing and walking requirements of light work.

3.  The ALJ made proper credibility determinations regarding Plaintiff's testimony and provided a means for this Court to review them. Plaintiff argues that the ALJ's errors render the ALJ decision unsupported by substantial evidence. Plaintiff objects to the Report and Recommendation's rejection of her claims and conclusion that the Acting Commissioner's determination is supported by substantial evidence.

Defendant disagrees with Plaintiff that the Magistrate Judge erred and argues that Plaintiff's objections are the same arguments raised in her statement of issues in support of judicial review and that substantial evidence of record exists to support the ALJ's findings and conclusions.  This Court agrees.

**LEGAL STANDARDS**

When considering objections to a magistrate judge's report and recommendation, a court must undertake a *de novo* review of the portions of the report and recommendation to which the plaintiff has objected. *See* 28 U.S.C. § 636(b)(1); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998); *Martinez* , 2011 WL 4974445, at *2. In order to qualify for *de novo* review, "an objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge." *Martinez*, 2011 WL 4974445, at *2; *see also Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (noting that *de novo* review of objections is not appropriate when such review would undermine efficiency of the magistrate system); *Becker v. Tennis*, 2011 WL 2550544, at *1 n.3 (E.D. Pa. June 23, 2011) (court declining to address contentions included in petitioner's objections, concluding that they are "nothing more than a restatement of the underlying claims contained in his petition."). The district court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). The review of a Commissioner's decision is, however, limited in scope. When reviewing an administrative decision denying social security benefits, the court must uphold any factual determination made by the administrative law judge ("ALJ") that is supported by substantial evidence. *Id*. The court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the court is limited to determining whether the ALJ applied the correct legal standards and whether the record, as a whole, contains substantial

evidence to support the ALJ's findings of fact.  *See* 42 U.S.C. § 405(g); *Martinez v. Astrue*, 2011 WL 4974445, at *1 (E.D. Pa. Oct. 19, 2011) (quoting *Gilmore v. Barnhart*, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005)); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence does not mean a large or considerable amount of evidence but, rather, such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552.  Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).  A "Commissioner's findings 'as to any fact' if supported by substantial evidence, shall be conclusive." *Gilmore*, 356 F. Supp. 2d at 511 (quoting, 42 U.S.C. §405(g)).  The "substantial evidence test is 'deferential.'" *Ray v. Astrue*, 649 F. Supp. 2d 391, 398 (E.D. Pa. 2009) (quoting *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986)).  Credibility determinations are reserved for the ALJ.  *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983) (internal citations omitted).  Although the court reviews the record as a whole to determine whether substantial evidence supports a factual finding, it may not weigh the evidence, and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently." *Ray*, 649 F. Supp. 2d at 398-99 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).  However, the court must conduct a plenary review of the administrative law judge's legal conclusions, *Payton v. Barnhart,* 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006), and may overturn the decision for legal error even if the decision was supported by substantial evidence. *Id.*

To prove entitlement to social security disability benefits, a claimant, such as Plaintiff, must demonstrate that she has a physical and/or mental impairment of such a severity that she is

not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy, regardless of whether such work exists in the immediate area where she resides, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Social Security regulations provide for a five-step sequential evaluation process for determining whether an individual is disabled.[2]  The claimant bears the burden of establishing steps one through four, with the burden shifting to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience, and residual functional capacity ("RFC").  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).  Of note, the functional equivalence analysis in step four "involves substantially different criteria than those used to determine medical equivalence." *See Mills-Sorrells v. Comm'r. of Soc. Sec.,* 153 F. Supp. 3d 703, 712 n.8 (E.D. Pa. 2015); *compare* 20 C.F.R. § 416.926 (stating the standards for medical equivalence) *with id.* § 416.926a (stating the standards for functional equivalence).  Although the same evidence may be

---

[2]      At step one of this five-step process, the ALJ considers the claimant's work activity, if any.  If the claimant is currently engaged in substantial gainful activity, the ALJ will find that the petitioner is not disabled.  At step two, the ALJ considers the medical severity of the claimant's impairment(s).  If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the ALJ will not find the plaintiff disabled.  At step three, the ALJ must determine whether the petitioner's impairment or combination of impairments met or was medically equal to one of the listings under Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix One.  If claimant's impairments do not meet one of the listings, the ALJ will move to step four, to assess the claimant's residual functional capacity and past relevant work experience.  If the claimant can perform past relevant work, he will be found not disabled.  If the claimant is unable to do any past relevant work, the ALJ moves to step five and considers the claimant's residual functional capacity, age, education, and work experiences in order to determine if he can do any other work.  In order to support a finding that the claimant can do other work, the agency is responsible for presenting evidence that demonstrates that such other work exists in significant numbers in the national economy that the claimant can do.  20 C.F.R.  §§ 404.1520(a) and 416.920(a).

considered when engaging in both analyses, the analyses and their respective criteria are wholly distinct. *See Mills-Sorrells,* 153 F. Supp. 3d at 712 n.8. Under the current framework, an ALJ can dispense with a functional equivalence analysis altogether if a claimant's impairment meets or medically equals an Appendix listing, but not vice versa. 20 C.F.R. § 416.924(d)(1).

**DISCUSSION**

In this matter, following an evidentiary hearing, the ALJ found that Plaintiff had not engaged in substantial activity since July 13, 2011, the onset date of Plaintiff's alleged disability, (Step one determination); that Plaintiff's physical conditions constituted "severe" impairments within the meaning of the Social Security regulations, but that her mental impairments were, at most, mild limitations and were not "severe" mental limitations (Step two determination); that Plaintiff did not have an impairment or a combination of impairments which met, medically equaled, or functionally equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix") (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) (Step three determination); that Plaintiff had the residual function capacity ("RFC") to perform her past relevant work as a cashier but with certain physical limitations (Step four determination); and that other jobs existed in the national economy that Plaintiff was able to perform in light of her RFC, (Step five determination). (R&R at 10-11). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security regulations since she could perform her past relevant work and/or other jobs in the national economy.

In her request for judicial review, Plaintiff argued that the ALJ erred in: (1) determining at step two that Plaintiff's mental impairments were not severe, and in failing to incorporate the limitations arising from those impairments in the RFC analysis at step four, [ECF 13 at 15-19];

(2) failing to consider certain material evidence when finding that Plaintiff retained RFC to perform the standing and walking requirements of light work, (*Id.* at 7-14); (3) failing to make a proper credibility assessment and/or sufficiently assess Plaintiff's subjective complaints of pain, (*Id.* at 14-15); and (4) not incorporating all of Plaintiff's credibly established limitations when posing a hypothetical question to the VE. (*Id.* at 19-21).

Similarly, in her objections to the R&R, Plaintiff contends that the Magistrate Judge erred in: (1) finding that substantial evidence exists to support the ALJ's determination at the step two analysis that Plaintiff's mental impairments were not severe; (2) concluding that the ALJ did not need to incorporate Plaintiff's mental impairments in the step four analysis, which included the state agency reviewing psychologist's opinion that Plaintiff has moderate limitations in her ability to understand detailed instructions; (3) concluding that substantial evidence exists to establish that Plaintiff could perform the standing and walking requirements of light work; (4) finding that the ALJ considered all relevant evidence when making the RFC determination; and (5) concluding that the ALJ properly considered Plaintiff's credibility and subjective complaints of pain.[3]

After a careful reading of Plaintiff's objections, this Court finds that these objections "simply rehash" the arguments presented in Plaintiff's request for judicial review which were thoroughly addressed by the Magistrate Judge in her well-reasoned 30-page R&R. Therefore, this Court does not need to perform a *de novo* review, nor is one warranted, since doing so would "defeat any benefit of judicial efficiency gained by the report and recommendation process."

---

[3]     In her objections, Plaintiff does not structure her objections in the same fashion. Rather, Plaintiff first objects to the Magistrate Judge's conclusion that the ALJ properly considered her mental impairments, [ECF 26 at 6-12], and, second, objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's finding that Plaintiff can perform the standing and walking requirements of light work. A fair reading of these objections, however, shows that Plaintiff raises the five specific objections noted herein. This Court, thus, will consider each of these objections.

*Palmer v. Astrue*, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010) (quoting *Morgan v. Astrue*, 2009 WL 3541001, at *4 (E.D. Pa. Oct. 30, 2009)); *see also Becker*, 2011 WL 2550544, at *1 n.3.

However, in the interests of judicial economy, each of Plaintiff's objections is addressed below.

*First Objection – Step Two Analysis of Severe Mental Impairments*

Briefly, in her first objection, Plaintiff argues that the Magistrate Judge erred: (a) in agreeing with the ALJ's finding, at step two, that Plaintiff's mental impairments were not "severe," and that the ALJ's finding was supported by substantial evidence, and (b) in finding that if the ALJ erred in this regard, the error was "harmless." [ECF 26 at 6]. Based on a review of the record, this Court disagrees with Plaintiff's contentions.

As noted, at step two of the five-step sequential analysis, an ALJ must determine whether a claimant has a "severe" medically determinable impairment or combination of impairments that meets the duration requirement of 20 CRF § 404.1509. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)). Here, the ALJ found that in addition to having two severe physical impairments,[4] Plaintiff had two medically determinable mental impairments; *i.e.*; an adjustment disorder and a cocaine dependence, in remission. (R&R at 10). The ALJ concluded that these mental impairments, based on the lack of medical records and on the fact that Plaintiff had discontinued treatment for these conditions in 2010 and had not sought mental health treatment since the date of her application for benefits in 2011, were not severe. (*Id.* at 13). This Court finds no error in these

---

[4]  Back disorder and bilateral knee disorder.  (R&R at 10).

determinations and reasoning, and opines that a review of the record supports the ALJ's step two analysis.

In addition, the ALJ analyzed Plaintiff's mental impairments under the four functional areas required by the relevant regulations, and reached the same conclusions. (*Id.* at 13-14; R. 17). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R § 404.1521(a). When evaluating whether a claimant's alleged mental impairment is severe, an ALJ must evaluate the record to determine the degree of the claimant's limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c).[5] These functional areas are known as the "paragraph B" criteria. The limitations identified in the paragraph B criteria are not the RFC assessment analysis of step four but instead are used to rate the severity of mental impairments at steps two and three. (R. 17). If an ALJ rates a claimant's degree of limitations in the first three functional areas as "none" or "mild," and "none" in the fourth area, the ALJ must conclude that the alleged mental impairments are not severe. 20 C.F.R. § 416.920a(d)(1). An ALJ may determine that an impairment is not severe "only if the evidence establishes a slight abnormality or a combination [thereof] which have no more than a minimal effect on an individual's ability to work." *Newell*, 347 F.3d at 546 (internal quotations omitted). While reasonable doubt must be resolved in favor of the claimant, unsubstantiated or frivolous claims may be denied at this step. *Id.* at 546-47; *see e.g.*, *Kerins v. Comm'r of Soc. Sec. Admin.*, 174 F. App'x 100, 103 (3d Cir. 2006), *Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 208 (3d Cir. 2006).

---

[5]     These criteria are set forth in the disability regulations for evaluating mental disorders, and in section 12.00C of the Listing of Impairment (20 C.F.R., Part 404, Subpart P, Appendix 1).

Here, the evidence of record, including Plaintiff's own testimony, supports the ALJ's finding that Plaintiff had "no more than mild limitations" in the first three functional areas, as demonstrated by the following findings: (1) in terms of daily living, Plaintiff testified that she lives alone, prepares her own meals, performs light household chores, and does her own shopping; (2) with regard to social functioning, Plaintiff testified that she socializes with her friends regularly, attends religious services, is in a romantic relationship, and is able to be around crowds; and (3) with respect to concentration, persistence, and pace, Plaintiff testified that she enjoyed watching television, reading, and completing puzzles.  (R. 16-17, 33-35).  Clearly, Plaintiff's own testimony belies any claim that she suffers from a severe mental impairment.  In addition, in the fourth functional area, the ALJ found no evidence of decompensation.  (*Id.*).

Notwithstanding, Plaintiff argues that at step two, the ALJ failed to consider: (a) Dr. Sebastallini's[6] mental RFC assessment ("MRFC") and Psychiatric Review Technique ("PRT"), and that Plaintiff had a moderate impairment in concentration, persistence, and pace;[7] and (b) the statements of a Social Security claims representative who noticed Plaintiff had trouble staying on task during an interview.  [ECF 26 at 6-7, 9-10].  While Plaintiff is correct to argue that during the step two analysis the ALJ should have considered all of the evidence of Plaintiff's alleged mental impairments, including Dr. Sebastallini's MRFC and PRT and, to a lesser degree, the statements made by the claims representative, still no error was committed.  The totality of the

---

[6]     Dr. Sebastallini is a State Agency reviewing psychologist.  (R. 84).  In addition to finding that Plaintiff had a moderate impairment in her ability to understand, remember, and carry out detailed instructions, Dr. Sebastallini found that Plaintiff was "not significantly limited" with respect to, *inter alia*, understanding, remembering, and carrying out very short and simple instructions.  (R. 88).

[7]     "Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review."  *Walker v. Astrue*, 733 F. Supp. 2d 582, 588 (E.D. Pa. 2010) (quoting SSR 96-6p).

evidence of record, including Plaintiff's testimony, substantially supports the ALJ's findings that Plaintiff did not suffer a "severe" mental limitation.

Even if this Court were to conclude that the ALJ erred in finding that Plaintiff's mental impairments are not severe—which this Court does not—this Court agrees with the Magistrate Judge that such error would be harmless in light of the ALJ's finding that Plaintiff suffered severe physical impairments which resulted in the ALJ proceeding to the step three analysis.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford,* 399 F.3d at 553); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 658 (6th Cir. 2009) ("Notwithstanding [a step two] error, the ALJ ultimately concluded that [claimant] had a severe mental impairment and proceeded to step three, which was all [claimant] could have asked for.").[8]  Therefore, based on this analysis and case law, Plaintiff's first objection is overruled.

*Second Objection –Steps Four and Five Mental Residual Functional Capacity*

In her second objection, Plaintiff argues that the Magistrate Judge erred in concluding that a remand was not necessary for the ALJ to reconsider Plaintiff's MRFC at the steps four and five analyses.  [ECF 26 at 6-8, 11-12].  Specifically, Plaintiff argues that because the ALJ, at step two, found Plaintiff did have mental impairments, the ALJ was required to incorporate any resultant mental limitations into the step four RFC determination, [ECF 26 at 6-9], yet failed to

---

[8]      Plaintiff argues that "step two denials should be rare" and relies on *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 361 (3d Cir. 2004) for support.  [ECF 26 at 8-9].  However, *McCrea* is distinguishable from the instant case because in *McCrea*, the court analyzed an outright denial of disability benefits at step two.  In this case, however, the ALJ simply determined that Plaintiff's mental impairments were not severe at step two but found that Plaintiff had severe physical impairments at step two and continued the five-step evaluation process.  Thus, any alleged error on the part of the ALJ in assessing the severity of Plaintiff's mental impairments is harmless.  Plaintiff's objection that such an error, if committed, was not harmless is, thus, overruled.

address Dr. Sebastallini's MRFC assessment which found, *inter alia*, that Plaintiff's ability to understand and remember detailed instructions was moderately limited.  Plaintiff further argues that the Magistrate Judge erred in concluding that because unskilled work does not require one to carry out detailed instructions, the ALJ's omission was harmless error .  (*Id.* at 9-12).  This Court finds that this argument lacks merit.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [the] paragraph[] B [criteria] . . . ."  SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996); (R.17).  The ALJ explained that this detailed assessment was satisfied because the RFC assessment at step four reflected the degree of limitation found in the paragraph B mental function analysis at step two.  (R. 17); *see also Chanbunmy v. Astrue*, 2011 WL 6303240, at *4 (E.D. Pa. Nov. 22, 2011) (finding that the ALJ correctly satisfied the more detailed assessment requirement by translating paragraph B criteria findings into work-related functions in the RFC assessment).[9]  "The determination of the claimant's RFC is the exclusive responsibility of the ALJ [and] the ALJ need only include in the RFC those limitations which he finds credible."  *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008).  The ALJ's apparent decision to not include any paragraph B mental limitations in the RFC assessment is supported by substantial evidence, including Plaintiff's own testimony regarding her mental state and the lack of medical evidence supporting any significant mental limitations.

Plaintiff also argues that the ALJ failed to fully consider Dr. Sebastallini's MRFC and PRT reports, and to address his finding that Plaintiff was limited in her ability to understand

---

[9]     To the extent that Plaintiff relies directly on the ALJ's paragraph B findings, Plaintiff relies on the wrong standard.  The ALJ correctly noted that the paragraph B criteria findings were severity findings for steps two and three, but *not* a RFC assessment at step four.  Therefore, the ALJ did not err by not explicitly including her paragraph B findings in her RFC determination.

detailed instructions. [ECF 26 at 11]. In his MRFC report, Dr. Sebastallini found that Plaintiff, while able to understand and remember short and simple instructions, was "moderately limited" in her ability to understand and remember detailed instructions, specifically noting that Plaintiff was of average intelligence but "because of her anxiety/depression, she may at times exhibit issues with complex/detailed instructions/tasks." (R. 88). The Magistrate Judge found that while the ALJ should have addressed Dr. Sebastallini's opinion that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, the ALJ's apparent failure to do so was harmless error because the category of unskilled work, as defined in the regulations, does not require the ability to understand detailed instructions. (R&R at 23-24).

Plaintiff objects to the Magistrate Judge's conclusion that such failure was harmless and argues that unskilled work can at times require understanding detailed instructions, such as occurred in Plaintiff's past work experience and the other jobs identified in the national economy that, according to the vocational expert ("VE") and the ALJ, Plaintiff can perform. Based upon the evidence of record, the ALJ concluded that Plaintiff could perform "light work," as defined by 20 C.F.R. § 416.967(b), but did not explicitly identify what skill level of work Plaintiff was able to perform. (R. 18-19). The VE, however, identified Plaintiff's past relevant work as a cashier and a mail sorter as "light and *unskilled*." (R. 38-39) (emphasis added). The jobs in the national economy that the VE concluded Plaintiff could perform were listed as "unskilled" jobs. (*Id.* at 42). The ALJ, in agreeing that Plaintiff can perform her past work as a cashier and the other jobs in the national economy identified by the VE, implicitly agreed that Plaintiff was limited to "unskilled" work. As noted *supra*, unskilled work requires "little to no judgment to do simple duties . . . ." 20 C.F.R. § 416.968(a). The definition of "unskilled work" does not specify what level of instructions a worker must be able to follow. A review of the case law, however,

reveals that unskilled work may, for some jobs, require the ability to understand and remember detailed instructions, as opposed to only simple instructions. *See Smith-Schaeffer v. Comm'r of Soc. Sec.*, 2013 WL 1962668, at *7 (W.D. Pa. May 10, 2013) ("[T]he definition of unskilled work *may* arguably encompass plaintiff's limitations with respect to carry out detailed instruction . . . .") (emphasis added); *see generally Alvarado v. Colvin*, 147 F. Supp. 3d 297, 305-06 (E.D. Pa. 2015) (discussing unskilled work and noting that the jobs can require Reasoning level 2, which requires the ability to carry out detailed instructions). However, that some unskilled jobs require the ability to understand detailed instructions does not mean that all jobs in the national economy require understanding detailed in instructions. Some do not.

Regarding Plaintiff's specific mental limitations and the jobs available to her, the ALJ questioned the VE whether Plaintiff could perform her past work or other work in the national economy. As part of this examination, the ALJ directed the VE to:

> [A]ssume an individual of [Plaintiff's] age, education, work experience having the following residual functional capacity. Being able to lift up to 20 pounds, sit for six hours, stand and walk for six hours. No pushing or pulling with the lower extremities, no overhead reaching, avoidance of temperature extremes, and avoidance of dust, fumes, toxins, et cetera.

(R. 40-41). The ALJ did not ask the VE to consider any mental limitations in the hypothetical assessment or a limitation regarding the ability to understand and remember detailed instructions. The ALJ asked if such a person having the above RFC could perform Plaintiff's past relevant work experience. (*Id.* at 41). As the hypothetical was framed, the VE opined that someone with that RFC could work as a cashier, one of Plaintiff's past jobs. (*Id.* at 42). When asked if there were other jobs in the national economy that someone with this RFC could perform, the VE gave three representative examples: bakery worker, bench assembler, and inspector. (*Id.*). The VE

identified all of these jobs as "light and unskilled." (*Id.*). Neither the VE nor the ALJ specified what level of instruction one needed to understand in order to perform these jobs.

The Dictionary of Occupational Titles ("DOT") is a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, and is used to determine where jobs exist that a claimant can perform. *Burns*, 312 F.3d at 119; *McHerrin v. Astrue*, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010). Within each job listing, "the DOT breaks down the requirements necessary to perform a job," including what reasoning level is necessary to perform the specific job. *McHerrin*, 2010 WL 3516433, at *3; *see also Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010) ("Each occupation in the DOT is coded with a reasoning development level, which corresponds to the ability to follow instructions and solve problems that is required for satisfactory job performance."). These reasoning levels focus on, *inter alia*, the complexity of directions one must be able to understand in order to perform the job in question.

While neither the VE nor the ALJ provided a DOT job number for the jobs or positions identified, Plaintiff argues, and a review of the DOT confirms, that her previous work experience as a cashier requires a reasoning level of 3, and the three jobs in the national economy identified by the VE all require a reasoning level of either 1 or 2.[10] A reasoning level of 1 requires that a

---

[10] The VE described Plaintiff's prior job as a cashier as "light and unskilled with an SVP of 2." (R. 38-39). In reviewing the DOT for cashier jobs that correspond to this description, only Cashier II (No. 211.462-010) and Parimutuel-Ticket Cashier (No. 211.467-018) have an SVP of 2. *See* Clerical and Sales Occupations, Dictionary of Occupational Titles (4th Ed., Rev. 1991), at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM. Both of these positions require a reasoning level of 3. *See id.*

The VE described the national economy jobs of bench assembler, inspector, and bakery worker as all having an SVP of 2. (R. 42). As noted earlier, because neither the VE nor the ALJ identified these positions by specific title or job number, it is difficult for this Court to determine what reasoning level these jobs require. Plaintiff asserts that the job of "bench assembler" is likely the Assembler, Small

person "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C: Components of the Definition Trailer, Dictionary of Occupational Titles (4th Ed., Rev. 1991)[11] A reasoning level of 2 requires that a person "[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.*" *Id.* (emphasis added); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004). Reasoning level 3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Appendix C: Components of the Definition Trailer, Dictionary of Occupational Titles (4th Ed., Rev. 1991); *Ingram v. Colvin*, 2015 WL 3513269, at *7 (E.D. Pa. June 4, 2015). Thus, had the ALJ given full weight to Dr. Sebastallini's opinion and concluded that Plaintiff was unable to understand detailed instructions and included this limitation in the RFC, a worker with similar limitations would not be able to perform Plaintiff's prior job as a cashier, or work as a bench assembler or inspector, two of the three national economy jobs identified by the VE, because these jobs call for a reasoning level of 2 or 3, meaning one must be able to understand detailed instructions.

---

Products I (No. 706-684-022). This Court notes that it may also be the job of Bench Assembler (No. 706.684.042). Both of these jobs require a reasoning level of 2. *See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07A.HTM. Plaintiff asserts that the job of "inspector" that corresponds with the VE's testimony is likely that of Inspector and Hand Packager (No. 59.687.074), which requires a reasoning level of 2. *See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05F.HTM. A review of other jobs that include inspector as part of their title shows that many of these jobs require at a minimum a Reasoning level of 2. The job of bakery worker that appears to correspond with the VE's testimony is Bakery Worker, Conveyor Line (No. 524.687.022). This job requires a reasoning level of 1.

[11]     Located at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.

Plaintiff argues that because some of the jobs identified by the VE require the ability to understand detailed instructions, the ALJ's failure to incorporate Dr. Sebastallini's findings, or at a minimum, explain the weight given to them, warrants remand to allow the ALJ to consider this limitation. As acknowledged by this Court, the ALJ should have explained what weight, if any, was given to Dr. Sebastallini's findings. *See* SSR 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996) (while an ALJ is "not bound by any findings made by State agency medical or psychological consultants," 20 C.F.R. § 416.927, an ALJ is not entitled to "ignore these opinions and must explain the weight given to these opinions in their decisions."). However, as the Magistrate Judge found, *albeit* for other reasons, this Court also concludes that the ALJ's failure to do so was harmless and that a remand is not required. Even giving Plaintiff the full benefit of her argument and assuming that Dr. Sebastallini's conclusion regarding Plaintiff's moderate limitation in understanding detailed instructions warranted inclusion in the RFC assessment, a person with this "new" adjusted RFC would still be able to perform work in the national economy as a bakery worker, a job identified by the VE, which requires a reasoning level of 1. Thus, based on the record before us, even if Plaintiff were limited to jobs that require *only* the ability to understand simple instructions, there is still at least one job in the national economy that Plaintiff can perform. Accordingly, the ALJ's determination that Plaintiff can perform jobs in the national economy and is, thus, not disabled, is supported by substantial evidence. The ALJ's failure to specifically address Dr. Sebastallini's opinions was harmless error since the outcome would be the same had the limitation been included and, therefore, remand is not required. *See Rutherford*, 399 F.3d at 553 (holding that remand is not warranted where error by

the ALJ is harmless and would not affect the outcome of the case). Plaintiff's second objection is, therefore, overruled.[12]

*Third and Fourth Objections – Step Four Physical RFC Determination*

In her third objection, Plaintiff argues that the ALJ erred in determining at step four that Plaintiff retained the RFC to perform light work and/or that the record supports the conclusion that Plaintiff can perform the standing and walking requirements of any such position.

Residual function capacity or RFC is what "an individual is still able to do despite the limitations caused by his or her impairments(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft*, 181 F.3d at 359 n.1). At step four of the disability evaluation process, an ALJ must determine whether, despite the claimant's impairments, the claimant retains the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(a) and 416.920(a). When an ALJ makes an RFC determination, "the ALJ must consider all relevant evidence," such as objective medical evidence, the claimant's subjective complaints, and all evidence of daily activity. *Burnett*, 220 F.3d at 121 (citations omitted). "The determination of the claimant's RFC is the exclusive responsibility of the ALJ." *Garrett*, 274 F. App'x at 163.

Here, the ALJ found at step four that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), "except she cannot perform pushing or pulling with her lower

---

[12]     To the extent that Plaintiff objects to the R&R and ALJ's decision on the basis that a conflict exists between the VE's testimony and the DOT because the positions identified by the VE require the ability to carry out detailed instructions, Plaintiff's argument is without merit. Normally, if a conflict between the VE and DOT exists, "an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved." *Alvarado*, 147 F. Supp. 2d at 306 (citing *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014)). However, no such conflict exists here. Neither the ALJ nor the VE mentioned any limitations in regards to Plaintiff's ability to understand, remember, and/or carry out any type of instructions, including detailed instructions. Therefore, any objection premised on this alleged conflict is overruled.

extremities; cannot perform overhead reaching; and must avoid temperature extremes, dust, fumes, and toxins."[13]  (R. 18).  This Court finds that the ALJ sufficiently evaluated the medical and opinion evidence at step four, as noted by the Magistrate Judge's review; *to wit*:

> After careful consideration of the evidence, the [ALJ found Plaintiff's] medically determinable impairments could reasonably be expected to cause symptoms that result in the above found physical limitations.  The record shows that [Plaintiff] has a reduced motor strength and limited range of motion of the cervical and lumbar spine, but that she has no difficulty walking or performing postural activities.
>
> As for the opinion evidence, the [ALJ considered] the State agency physical [RFC] assessment completed by Dr. Anne Zaydon.  This assessment concluded that [Plaintiff] is limited to a range of light exertional work activities with certain postural limitations and environmental limitations.   The lifting and carry restrictions expressed in this opinion are consistent with the evidence of record as a whole.   However, this opinion did not account for [Plaintiff's] recorded limitations in pushing and pulling with her lower extremities and reaching overhead[.]
>
> The [ALJ] has also considered the statement provided by [Dr. Coubarous, a consultative examiner].   This opinion determined that [Plaintiff] is capable of medium exertional work activities with limited pushing and pulling with [Plaintiff's] extremities, postural limitations, and environmental limitations.  This opinion was based on a direct examination of [Plaintiff's] abilities, however the evidence as a whole supports a finding that [Plaintiff] is capable of no more than light exertional work activities.
>
> In combining parts of [Dr. Zaydon's] physical [RFC] assessment and [Dr. Coubarous's] opinion that are consistent with the evidence of record as a whole, the [ALJ formed] the above [RFC] for a range of light exertional work activities.

---

[13]     The Regulations define "light work" as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm and leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).  In order to perform a full range of light work, an individual must be able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday.  *See* SSR 83-10, 1983 WL 31251, at *8 (S.S.A. Jan. 1, 1983).

R. 19.  Given the ALJ's careful and thorough review of the medical objective evidence in the record and the VE's testimony,[14] this Court finds that the ALJ's RFC determination as it relates to Plaintiff's physical limitations was supported by substantial evidence.  Therefore, this objection is overruled.

In her fourth objection, Plaintiff reasserts her argument that the ALJ failed to adequately develop the record and consider all of the relevant medical opinion evidence when determining that Plaintiff could perform the standing and walking requirements of light work.  [ECF 26 at 13-21].  Specifically, Plaintiff contends that Dr. Orlow's and Dr. Sdefu's examining source opinions contradict the ALJ's finding as to Plaintiff's ability to stand and walk for six hours in an eight-hour day.  (*Id.* at 15-16).  Plaintiff argues that Dr. Orlow's and Dr. Sdefu's opinions were in the possession of the SSA and that the ALJ should have considered these opinions because the ALJ relied on, *inter alia*, Dr. Zaydon's opinion and Dr. Zaydon reviewed Dr. Orlow's and Dr. Sdefu's opinions, (R. 85), in reaching her physical RFC recommendation.  (R. 85).  [ECF 26 at 13, 16 n.5, 17 n.6].  This Court disagrees.

The ALJ's obligation to develop the record is set forth in the regulation that addresses the subject of evidence; *i.e.*; 20 C.F.R. § 416.912.  This regulation makes clear that it is generally the *claimant's* burden to prove disability, which "means that [*the claimant*] must furnish medical and other evidence that [the agency] can use to reach conclusions about [her] medical

---

[14]    In short, the VE testified that based on the aforementioned RFC, a hypothetical person with Plaintiff's age, education, work experience, and physical, postural, and environmental limitations could perform her past relevant work, *i.e.*, unskilled work as a cashier.  This Court finds that the VE's testimony, which is part of the evidence the ALJ must consider, is consistent with the record as a whole, insofar as it focuses on Plaintiff's physical limitations.  *See Szallar v. Comm'r Soc. Sec.*, 631 F. App'x 107, 111 (3d Cir. 2015) (relying on a VE's response to an appropriate hypothetical question when the VE's testimony was part of the evidence of record).

impairments(s)."  20 C.F.R. § 416.912(a) (emphasis added).  Before making a determination, the agency takes on the responsibility to "develop" the claimant's "complete medical history" which covers at least the twelve months preceding the month in which the claimant files her application, "unless there is a reason to believe that development of an earlier period is necessary," or unless the claimant says that her disability began less than twelve months before she filed her application.  *Id.* at § 416.912(d).

This Court agrees with the Magistrate Judge that the ALJ was not obligated to obtain or consider Dr. Orlow's and Dr. Sdefu's consultative examination reports.  First, it is the Plaintiff's burden, and not the ALJ's, to obtain these reports and furnish them to the ALJ for consideration. Thus, the ALJ committed no error in not locating and considering these opinions.  Second, even if Plaintiff had provided the ALJ with these reports, the ALJ was not required to consider reports, issued in September 2008 and February 2010 respectively, outside the relevant time period of July 13, 2010 and July 13, 2011; *i.e.,* the twelve month period preceding the filing of the application.  Thus, the fact that the ALJ did not locate, consider, or explain the weight afforded to those irrelevant reports, is not legal error.  *Cf. Johnson v. Cmm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (holding that an ALJ may reject, without explanation, any evidence pertaining to an irrelevant time). [15]

In addition, Plaintiff argues that the ALJ erred in not explaining why portions of Drs. Coubarous's and Zaydon's opinions were rejected.  [ECF 26 at 19-21].  Essentially, Plaintiff

---

[15]    Plaintiff argues that the Magistrate Judge's conclusion that the ALJ did not have a duty to obtain or consider Dr. Orlow's and Dr. Sdefu's reports because they were irrelevant raises serious due process issues.  [ECF 26 at 13-14].  This argument is premised on the confusion over whether Dr. Orlow's and Dr. Sdefu's consultative examination reports were part of the administrative record or in the possession of the Acting Commissioner.  (*Id.*).  However, because the ALJ was not required to consider these irrelevant reports, there are no due process concerns stemming from the ALJ not considering these reports.  This objection is overruled.

argues that the ALJ's conclusion that Plaintiff can perform her past relevant work for six hours with no sit and stand options directly contradicts Dr. Zaydon's finding that Plaintiff could stand for only four hours per day and Dr. Coubarous's finding that Plaintiff could sit for up to eight hours per day, but required a sit-stand option.  (*Id.* at 17-21).  Plaintiff's argument is flawed.

When making a RFC determination, the ALJ should consider all relevant evidence and "must give some indication of the evidence which he [or she] rejects and his [or her] reason(s) for discounting such evidence."[16]  *Burnett*, 220 F.3d at 121.  Nonetheless, "[i]t is only necessary to 'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Long v. Astrue*, No. 10-2828, 2911 WL 721518, at *2 (E.D. Pa. Feb. 23 2011) (quoting *Bencivengo v. Comm'r of Soc. Sec.* 251, F.3d 153 (Table), 00-1995, slip. op. at 4 (3d Cir. Dec. 19, 2000)) (rejecting the notion that the ALJ is required to make specific, written findings on dozens of individual work function categories).  "The Third Circuit and the judges of this court have declined to remand cases on the basis that the ALJ failed to provide a written function-by-function analysis when the ALJ's RFC determination is supported by substantial evidence and includes a discussion of how the record evidence supports the determination."  *White v. Astrue*, No. 10-1233, 2012 WL 1555399, *9 (E.D. Pa. Jan. 24, 2012), *report and recommendation adopted*, No. 10-1233, 2012 WL 1555435 (E.D. Pa. May 3, 2013) (citations omitted).

A review of the record shows that the ALJ did not commit legal error by failing to address why portions of Dr. Coubarous's and Dr. Zaydon's opinions were rejected.  Such a detailed explanation of the ALJ's RFC determination would amount to a function-by-function

---

[16]     The ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  *See* 20 C.F.R. § 416.927.

analysis which is not required.  Rather, the ALJ's analysis complies with *Long*.  First, the ALJ articulated the substantial evidence supporting the determination, citing to the review of the limited available medical records within the relevant time period, which in the ALJ's opinion did not support the finding that Plaintiff had any "difficulty walking or performing postural activities" despite her physical impairments.  (R. 18-19).  Second, the ALJ discussed Plaintiff's ability to perform work-related activities by recounting Plaintiff's testimony that she was able to perform household chores and go outside every day, socialize, and walk for blocks.  (R. 29-30, 33-35, 218, 220).  Third, the ALJ resolved any alleged inconsistencies in the record by explaining that she combined portions of Dr. Zaydon's and Dr. Coubarous's opinions, which was "consistent with the evidence of record as a whole" to find the RFC for less than the full range of light work.  Thus, the ALJ properly supported the decision with reference to the record and the RFC determination, as it relates to Plaintiff's physical limitations.  Under these circumstances, the ALJ was not required to explicitly explain her rejection of portions of Dr. Coubarous's and Dr. Zaydon's opinions.  Therefore, this objection lacks merit and is overruled.

*Fifth Objection – Plaintiff's Credibility and Subjective Complaints*

In Plaintiff's fifth objection, she argues that the ALJ failed to properly evaluate her credibility and, therefore, the evidence of record does not support the ALJ's rejection of her subjective complaints of pain.  This Court disagrees.

Under the SSR, when making a credibility determination about a claimant's statements, the ALJ must consider the entire case record, which includes the claimant's complaints of symptoms, and must "give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).  "Allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a

claimant's subjective testimony if she does not find it credible so long as [the ALJ] explains why she is rejecting the testimony." *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. 2007) (first citing 20 C.F.R. § 404.1529(c); then citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

Here, the ALJ evaluated Plaintiff's subjective complaints against the objective medical evidence in the record and Plaintiff's treatment history, which included an August 2010 MRI and x-ray results, Dr. Zaydon's RFC assessment, and Dr. Coubarous's physical examination findings. (R. 18-19).  The ALJ also considered Plaintiff's subjective testimony that, *inter alia*: (1) her back pain radiated down her lower extremities; (2) she received injections for knee pain; (3) she still receives pain medication; (4) she performs household chores but must go slowly because of pain when bending over; (5) she is able to shop and prepare meals; and (6) she needs help carrying groceries.  (R. 18).  Without reiterating the evidence, suffice it to state that the ALJ's finding that the record did not show that Plaintiff had "difficulty walking or performing postural activities" is supported by "more than a mere scintilla" of evidence.  The ALJ's apparent rejection of most of Plaintiff's subjective complaints suggests that the ALJ did not find those complaints to be supported by the objective medical evidence.

Credibility findings are the ALJ's prerogative and an explicit finding that Plaintiff's allegations are not credible is not required.  Here, the ALJ sufficiently analyzed Plaintiff's subjective complaints, and found that she was not entirely credible when considering the medical evidence of record, the limited treatment she sought within the relevant disability period,[17] and

---

[17]     Plaintiff argues that the ALJ ignored three Social Security Administration physicians' opinions. It is unclear which three physicians Plaintiff is referring to, but this Court infers that Plaintiff refers to the opinions of Drs. Sebastallini, Orlow, and Sdefu.  As discussed above, the ALJ did not err by failing to consider those opinions.

her testimony regarding her daily activities and abilities.[18]  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that an ALJ need not "use particular language or adhere to a particular format" in the five-step evaluation process so long as the ALJ provides sufficient analysis to "permit meaningful review.") (citations omitted).   Based upon the totality of the substantial evidence of record, this Court must give due deference to the ALJ assessment of Plaintiff's credibility and, therefore, finds no error.  *See Frazier v. Apfel*, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference . . . .").   Accordingly, this objection is overruled.

**CONCLUSION**

For the reasons stated herein**,** Plaintiff's objections to the R&R are overruled, Plaintiff's request for review and motion for summary judgment are denied, and the R&R is approved and adopted.  An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, USDCJ.

---

[18]    Plaintiff contends that her testimony regarding her daily activities is not inconsistent with her subjective complaints of pain.   While this argument, standing alone, may have some merit, the ALJ ultimately considered Plaintiff's testimony regarding her daily activities along with the objective medical evidence and limited treatment record, which satisfies the substantial evidence standard needed to support the ALJ's decision.